UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MONICA YVETTE McKEE, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> CBF CORPORATION, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. <br><br> 3:06-CV-1629-G <br><br> **ECF** |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant CBF Corporation ("CBF") for summary judgment. For the reasons stated below, the motion is granted.

### I. BACKGROUND

CBF operates nightclubs in Dallas and the surrounding area. Plaintiff's Original Complaint ("Complaint") ¶ 5. Plaintiff Monica Yvette McKee ("McKee") served as a "secretary and assistant" to CBF's management team. *Id.* CBF employed McKee for approximately 16 years. *Id.* CBF paid McKee a weekly salary of $750.

*Id.* ¶ 6.  McKee contends that she worked an average of over 40 hours each week for CBF.  *Id.*

McKee contends that she was unlawfully denied overtime compensation for the hours of work she performed in excess of 40 hours each week and that her employment was unlawfully terminated.  *Id.* ¶¶ 6, 7.  McKee alleges that CBF's stated reason for the termination of her employment was a pretext to hide its retaliatory motive.  *Id.* ¶ 7.  Specifically, McKee maintains that in mid-March 2006, CBF requested that McKee sign a false document in violation of the Immigration and Nationality Act ("INA") and the Immigration Reform and Control Act ("IRCA").  *Id.*  McKee refused to sign the documents and reported the incident to attorney James Lee ("Lee"), CBF's in-house counsel.  *Id.*  Another CBF employee signed the false documents.  *Id.*  Subsequently, CBF retaliated against McKee for her refusal to sign the documents, including subjecting McKee to a hostile work environment.  *Id.*  During an April 2006 meeting, McKee was told that "it was not her job to question company policy."  *Id.*

According to McKee, on June 6, 2006, CBF terminated McKee's employment.  *Id.*  CBF, on the other hand, contends that McKee quit her job after a dispute with her supervisor over a matter "wholly unrelated" to her alleged refusal to sign a false document.  Defendant's Brief in Support of its Motion for Summary Judgment ("Motion") at 1-2; *see also* Declaration of James W. Lee, III ¶ 7, *located in* Defendant's

Appendix, at 12.  CBF further avers that near the time McKee resigned, she was experiencing personal problems which resulted in "a marked deterioration in her job performance."  Motion at 2.

McKee seeks compensation, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for overtime hours of work for which CBF has allegedly failed to properly compensate her.  Complaint ¶ 8.  She also brings a claim under the common law of Texas for wrongful discharge.  *Id.* ¶¶ 9-10.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[*]  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  See *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant makes this showing, the nonmovant must then direct

---

[*] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id*. at 323-24. To carry this burden, the opponent must do more than simply show some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, she must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. All of the evidence must be viewed, however, in a light most favorable to the motion's opponent. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## B. Violation of the FLSA

CBF maintains that it is entitled to summary judgment on McKee's FLSA claim because (1) McKee was not an exempt administrative employee, and McKee cannot demonstrate that she worked in excess of 40 hours in any given week; and (2) McKee was not engaged in "interstate commerce" as required by the FLSA. Motion at 3-12.

### 1. Exempt Administrative Employee

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Exempt from the FLSA, however, are individuals "employed in a bona fide executive, administrative, or professional capacity." *Id*. § 213(a)(1). This exemption shall apply to any *bona fide* administrative employee

> (a) [w]hose primary duty consists of either:
>
> (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, . . .; and
>
> (b) Who customarily and regularly exercises discretion and independent judgment; and
>
> (c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity . . ., or
>
> (2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or
>
> (3) Who executes under only general supervision special assignments and tasks; and
>
> (d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
>
> (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week . . . .

29 C.F.R. § 541.2.

The court must determine whether an employee is exempt from the FLSA's overtime compensation provisions -- a determination that is a question of law for the judge, not of fact for the jury. See *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). The employer has the burden to prove that an employee is exempt under the FLSA, and that exemption is construed narrowly against the employer. *Tyler v. Union Oil Company of California*, 304 F.3d 379, 402 (5th Cir. 2002) (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)); see also *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir.), *cert. denied*, 534 U.S. 825 (2001).

To determine whether an employee falls within an FSLA exemption in the instant case, the court will analyze the McKee's job under the "short test." Under the "short test," an administrative employee may be exempt under the FLSA if: "(1) the employee has a salary of more than $250 per week; (2) the employee's primary duty is performing office work or nonmanual work directly related to management policies or general business operations; and (3) the employee exercises discretion and independent judgment." *Heidtman v. County of El Paso*, 171 F.3d 1038, 1041 (5th Cir. 1999); see also *Lott*, 203 F.3d at 331.

CBF contends that McKee was an exempt employee under the FSLA and thus not entitled to overtime pay. Motion at 5. During McKee's employment with CBF, CBF classified McKee as an exempt employee, and McKee never submitted time

records to dispute that she worked in excess of a 40 hour work week. Declaration of Kim Brown ("Brown Declaration") ¶ 17, *located in* Defendant's Appendix, at 8. McKee, on the other hand, maintains that CBF violated the FLSA by failing to provide her with overtime compensation. Complaint ¶ 8.

The parties do not dispute that McKee was paid a salary greater than $250 a week, and she primarily performed nonmanual work directly related to management policies or general business operations. Motion at 6; Defendant's Objections to Plaintiffs' [sic] Alleged Evidence, Motion to Strike, and Brief in Reply in Support of its Motion for Summary Judgement ("Reply") at 5. Thus, the issue before the court is whether McKee exercised discretion and independent judgment with respect to CBF's operations.

McKee maintains that "at no time was [she] employed as an officer, executive or director for [CBF], nor did her primary job duties include management of the business or the exercise of discretion and independent judgment on matters of significance." Complaint ¶ 5.

CBF contends that McKee did exercise discretion and independent judgment in her roles as a CBF property manager and telemarketing department manager. Motion at 6-9. She approved schedules and vacation time for both departments. *Id.* at 9. Although she did not hire or fire employees, she screened potential employees and provided recommendations to CBF's chief executive office. *Id.* at 8-9. As a CBF

property manager, McKee oversaw five employees and was charged with ensuring that CBF's venues were properly maintained. *Id.* at 7-8. Individual club managers gave McKee a list of issues to be addresses on a daily basis. *Id.* In turn, McKee was given "independent discretion" as to how to resolve these outstanding issues. *Id.* McKee managed a petty cash fund to order and purchase supplies; she was also responsisble for ordering beer and liquor for the clubs from various vendors. *Id.* McKee was one of the seven CBF employees with unrestricted access (*i.e.*, keys and alarm access codes) to CBF's corporate offices and its various clubs. *Id.* As telemarketing manager, McKee managed seven employees. *Id.* at 8.

McKee, on the other hand, contends that she was a "Girl Friday." Plaintiff's Reply in Opposition to Defendant's Motion for Summary Judgment ("Response") at 1. McKee maintains that she often acted as an intermediary between management employees and the various contractors and suppliers, but that she did not make independent decisions. *Id.* at 5. CBF has offered the declarations of several CBF employees to demonstrate McKee's supervisory and discretionary roles at CBF and her standard 40 hour work week. *See*, *e.g.*, Declaration of Maria Cardona, *located in* Defendant's Appendix, at 24-26; Declaration of Graciela Diaz, *located in* Defendant's Appendix, at 27-28; Declaration of Jose Diaz, *located in* Defendant's Appendix, at 29-30; Declaration of Mario Saucedo, *located in* Defendant's Appendix, at 31-32;

Declaration of Abel Vargas, *located in* Defendant's Appendix, at 33-35; Declaration of Salvador Sanchez, *located in* Defendant's Appendix, at 36-40.

McKee received a salary of more than $250 per week and primarily performed nonmanual work directly related to management policies or general business operations. It appears, from the evidence in the record, that McKee was given the discretion and judgment to make decisions without immediate supervision. Thus, the court concludes that CBF has demonstrated that the work performed by McKee is exempt from the overtime provisions of the FLSA.

2. Interstate Commerce

The FLSA requires that overtime compensation be paid to a non-exempt employee engaged in interstate commerce while performing her job duties. 29 U.S.C. § 207(a). It is the employee's burden to prove that she engaged in interstate commerce. *Sobrinio v. Medical Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam) (citing *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 90 (1942)).

The FLSA also applies to the intrastate employees of enterprises which (1) have other employees engaged interstate commerce and (2) have an annual gross volume of business equal to or in excess of five hundred thousand dollars. 29 U.S.C. § 203(s)(1)(A). The FLSA defines the term "enterprise" as "the related activities performed (either through unified operation or common control) by any person or

persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units." 29 U.S.C. § 203(r)(1).

To determine if an employee engaged in interstate commerce, the Fifth Circuit applies a "practical test." *Sobrinio*, 474 F.3d at 829. Under this practical test, the court must determine if the employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Id.* (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960) (dissent)). Any regular contact, no matter how minimum, will result in coverage under the FLSA. *Marshall v. Victoria Transportation Company, Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979); *Sobrinio*, 474 F.3d at 829. However, the employee's work must be "entwined with the continuous stream of interstate commerce." *Marshall*, 603 F.2d at 1125.

CBF asserts that neither the company nor its employees engage in interstate commerce. Motion at 4. CBF asserts that it only does business with suppliers with locations in Texas. Brown Declaration ¶ 5, *located in* Defendant's Appendix, at 5. CBF asserts that "McKee's job duties were entirely local in nature to the State of Texas." Motion at 4. Specifically, McKee contacted local businesses to schedule happy hours at one of CBF's four clubs in the Dallas-Fort Worth area, managed

CBF's telemarketing department, managed the daytime labor crew, hired local service companies, and provided administrative services. *Id*.

McKee asserts that she placed weekly beer orders with distributors whom billed CBF in excess of $500,000 per year. Response at 4. This beer "came from all over the country and a large amount came from Mexico." *Id*. McKee also contends that CBF hired entertainers for its clubs and entertained customers from other states. *Id*. CBF retorts that the "alleged business activities that McKee argues demonstrates interstate commerce are performed by the clubs, not CBF." Reply at 4. CBF further contends that McKee offers no evidence to refute CBF's position that the beer came from local suppliers. *Id*.

The court concludes that McKee has failed to sustain her burden of showing that, while working at CBF, she was engaged in interstate commerce.

C. <u>Wrongful Discharge</u>

McKee maintains that she was fired for refusing to participate in illegal activity under federal law. In Texas, the employment at will doctrine recognizes the right of an employer to terminate at will and without cause the employment of any individual who is employed for an indefinite term. *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 75, 10 S.W. 99, 102 (Tex. 1888). Over the past 100 years, Texas courts have created only one common law exception to the employment at will doctrine. That exception, articulated in *Sabine Pilot Service, Inc. v. Hauk*, 687 S.W.2d 733 (Tex. 1985), provides

than an employer may not terminate an employee if the sole reason for the discharge is that the employee refused to perform an illegal act. *Id*. at 735. Although several attempts have been made to create other exceptions, the doctrine has been impervious to further change. See, *e.g.*, *Winters v. Houston Chronicle Publishing Company*, 795 S.W.2d 723, 726 (Tex. 1990) (Doggett, J., concurring); *Johnston v. Del Mar Distributing Company, Inc.*, 776 S.W.2d 768, 770-71 (Tex. App.--Corpus Christi 1989, writ denied).

To fall within the *Sabine Pilot* exception, McKee must demonstrate that CBF *required* her to perform an illegal act. *Burt v. City of Burkburnett*, 800 S.W.2d 625, 627 (Tex. App.--Fort Worth 1990, writ denied). Even if it is assumed *arguendo* that CBF did ask McKee to sign employee documentation in violation of the INA and the IRCA, she refused and another employee eventually signed the documentation. Motion at 15-16; Complaint ¶ 7. McKee has not demonstrated that CBF reprimanded her for refusing to sign the document. There is no objective evidence to support McKee's subjective belief that she was terminated for failure to comply with CBF's request.

### III. CONCLUSION

For the reasons stated, the defendant's motion for summary judgment is **GRANTED**. Judgment will be entered for the defendant.

**SO ORDERED**.

March 19, 2008.

_____
**A. JOE FISH**
**Senior United States District Judge**